Our fourth case for this morning is Myron Mintz v. Caterpillar Inc. Mr. Richards. My name is Stephen Richards, and I represent the plaintiff appellate in this case, Myron Mintz. I'd like to deal with the issues in the following order. First, I'd like to deal with the issue of the grant of the motion for summary judgment, and then I will go on to the other issues. And within the grant of the motion for summary judgment, I would like to focus on counts 2 and 3 of the initial complaint, which dealt with discrimination on the basis of filing a complaint. To understand this case, you have to look at Myron Mintz's entire career from the point at which on the relevant issues in this case. Myron Mintz was a manufacturing engineer working for Caterpillar. He originally had a supervisor named Chuck Turpin. When he was working for Chuck Turpin, many aspects of his performance were good. Turpin had an issue with grief levels on his manufacturing line, and there's explanations in the brief of what grief levels are and why they're important and what the issue is for the employer. Originally, there was some suggestion that Mr. Mintz would be given a 3C rating. It's clear from the brief that the court needs an explanation. Basically, Caterpillar works on a system where 1 and 2 ratings, which are the highest, are very rare. The vast majority of employees get ratings in the 3 range, which can be either 3A, B, or C. And then 4, which is also luckily rare, is the rating you get when you're either put on an action plan or about to be fired. Mr. Mintz protested getting a 3C rating. His protest was successful to Mr. Turpin, and he got a 3B. But shortly thereafter, he was transferred to a new supervisor, Ryan Rumler, and then he had a series of issues with Ryan Rumler. So before we lose all of our time, though, Mr. Richards, I have to say my big problem, from your point of view, is where is the evidence that Mr. Mintz was meeting Caterpillar's legitimate expectations? His record seems to show increasing levels of being behind on these change orders and also this grief concept that Caterpillar uses. I just don't see where that particular element has been met, and I can't find in this record any similarly situated employees. I don't see you moving forward on a direct, meaning direct or circumstantial, evidence of discrimination claim. So what, on our de novo review, is your best argument for where the district court got it wrong? Your Honor, I think the argument, first of all, in terms of similarly situated employees, part of the problem is that when he was supervised by Ryan Rumler, he was, first of all, Ryan Rumler's first manufacturing engineer supervisee, and Rumler didn't supervise other manufacturing engineers. So there's no basis of comparison. But was there anybody else at Caterpillar who had a comparable record with respect to the change orders and the grief who was treated better than Mr. Mintz? We cannot point to such a person. Okay. So I think that's what I, at least, would be looking for on the similarly situated thing. And is there any reason to think that either Ryan Rumler or anybody else, for that matter, was dissembling somehow when they said to him, you're not keeping up with the pace, you're not achieving a satisfactory level of resolution of both of these points? Well, Your Honor, as to that, first of all, no one ever set a standard for grief except to say that the goal was zero grief, which I think if you look at the depositions is not, and as Mr. Mintz testified, is not something that's actually possible or ever achieved. So it may be an unreasonable target, but nonetheless employers can insist on unreasonable things and not necessarily discriminate? Well, the question is, is insisting on an unreasonable thing, if an employer insists on an unreasonable thing and sets no standard and the goal is zero, in other words, perfect performance, could you actually say that an employee is not meeting legitimate expectations if the expectations are zero grief, perfection, and therefore impossibility? But you're setting up a false dichotomy. He's so far from zero, I don't think we have to worry about zero. Yeah, and see, the thing is here, so is there any employee who has similar grief numbers as he has that got good performance evaluations? Because I don't think you answered Judge Wood's question. Because that's what I want to know. Somebody who had the same kind of grief numbers he had but got a good performance evaluation. Or even another employee who was told grief doesn't really matter or grief doesn't have to get to zero. Okay. The answer to that question is there might, when he was being supervised by Turpin and there was a field of manufacturing engineers to compare, possibly. But the employer. So the answer is no. The answer is no. I can't point to a specific employee. So what you've said even in your brief, I'm looking at page 16, is as of January 1, 2012, he had 5,790 lines of this MBM grief and 682 lines of the 1410 grief. That's what I mean. This is so far from zero. It was bad even in comparison to his own earlier record. Well, it certainly was declining and had issues. But, again, Rumler never testified that there was some reasonable level of grief that he wanted to meet. Rumler never testified that Rumler couldn't by his own, he wasn't supervising by his own admissions, supervising other employees who would be similarly measured by that metric. But what he is doing, what Rumler is doing, is signaling that this is not an acceptable level by lowering Mr. Mintz's performance, his interim performance ratings. He goes from the 3B down to the 3C and eventually winds up at a 4, right? Right. Rumler is doing that. And so that's a communication. I don't think this is what we're looking for. Right. But I think there's a factual issue in dispute, particularly because. . . What is the factual issue? Well, I think the factual issue in dispute was whether he's meeting the legitimate expectations. Obviously, he's not meeting the expectation because Rumler says, you're not meeting my expectation. But the question is, is it legitimate, and is there a question of fact to go to the jury? So what evidence have you really presented that it was illegitimate? Well, my client testified during his deposition that in terms of other metrics, like things like the number of tractors produced and the number of tractor parts produced, that things were fine, that there were other causes for the levels of grief having to do with different computer systems and things that are happening with the manufacturer. And then, in fact, he was meeting a legitimate expectation. So I think there's a dispute between the parties on the issue of whether the expectation is legitimate. And I think that's an issue that can go to the jury. But you're asking this court to get into a pretty finely grained issue of management policy at Caterpillar. And we normally say that that's not our business. Our business is dispute resolution. We let Caterpillar build tractors and other equipment. And so if Caterpillar thinks that this is not an acceptable performance, we need some hook to show that they're being discriminatory, that they're not just being unreasonable, but that they're being discriminatory when they do that. Well, I think the hook would be what I've said before, plus the fact that in terms of the retaliation claim, which I think is the strongest, there was a claim that he did file a complaint on May 19th of the relevant year, 2011, I believe. And Rumler admitted that he learned of this complaint at some point, although he couldn't say or couldn't remember when, which I think leads to an inference that it was closer in time rather than further in time than before. So he'd gotten negative performance evaluations, though, even before the complaint. Well, they had gone down into the 3C level, but not into the 4A level. The 4A level was sort of a dramatic shift in that 4A levels cause you to get action plans, on-the-road determination, et cetera, and that's what is being complained of. Okay. Well, if you want to save a minute for rebuttal, that would be good to do. I will. Thank you. Mr. Torres. Good morning, Your Honors. Jason Torres on behalf of Defendant Appellee Caterpillar Incorporated. I'd like to begin by just pointing out one item with respect to the similarly situated employees that Mr. Cord has rightly pointed out. Actually, it's admitted fact, number 58, in Caterpillar's brief. It's on page 16, and the fact is that Mince has not identified any employees who he believes were treated better than him with respect to discipline, performance, hire, promotion, transfer, compensation, company policies, or any other terms and conditions of employment. And that's actually an admitted fact. And then so was Caterpillar Company's goal to have zero grief, or was that Rumler's goal? I think the record reflects that it was Mr. Rumler's goal and Caterpillar's goal. And the idea of having zero grief, grief, as you know from the record, is an error in the system that's created when what we're about to build on the production line differs from what the customer has ordered. So just to clarify this a little bit, it's such a funny term. So the customer puts in an order, and then I guess somebody has to translate the customer order into specific instructions for the production line. And this grief is where there's a failure of translation somehow. Somebody doesn't put in a step or fails to say, no, no, they want this gizmo on a two or whatever. That's correct, Your Honor. So there would be a difference, for example, between the specifications or the configurations of a particular tractor that the customer orders. And as it goes through the routing system at Caterpillar, whether it's through the design department or the engineering department, there are errors that are created in terms of the tooling that might be needed before it gets to the production line. And when the production line sees that, it creates grief in the system, and then the manufacturing engineer is responsible. So the manufacturing engineer is the ones who are supposed to spot this discrepancy. It can be spotted along the routing process, Your Honor, but the manufacturing engineer is responsible for getting it fixed, fixing it himself, or facilitating getting it fixed because he's the last line in the routing process before it goes to the production line to be built. Now, does the record show that as Mr. Mintz's grief and the work order implementation were becoming greater in number, that there were more teardowns or that there were actual problems on the production line? Your Honor, there is reference in the record to teardowns that were the fault of Mr. Mintz later in the year in 2011. I believe it was, I can find it in the record if you'd like me to point to it, but I believe it was a D11 tractor that made it all the way to being built and to the point where it's being painted, and then they had to, they realized that it was built wrong and that it was Mr. Mintz's fault and that they had to tear it down and that obviously costed a lot of production time and downtime on the production line. So there is some evidence in the record, Your Honor, that that in fact happened. Was there something for supervisors then targeted in terms of the aim, in terms of the level of grief that would be considered acceptable? I understand zero would be the ideal, you know, almost never happens world. But were there different targets that the supervisors had agreed on? No, the only target, Your Honor, that's in the record is that you need to have zero grief at the point that you're getting ready to build the tractor. So there were two different types of grief. That's the 1410? That 1410 grief would be grief that is in the system that is for a tractor, for example, that's getting ready to be built in the very short term on the production line. So that needs to be as close to zero as possible, as soon as possible, and it needs to be at zero when that tractor is built. The MBM grief is grief that's in the system. Tractors will be coming down on the production line. It could be months from now. It could be a year from now. That grief is in the system. It needs to get fixed, but it's not of the same priority that the 1410 grief is. So to get back to your question, Judge, the standard is the goal was to have it at zero at the point where we're building these tractors, but there are not written standards that say this is an acceptable amount of grief at this point in time or this is not an acceptable amount of grief at this time. That was something that Mr. Rumler judged on his own somewhat subjectively based on his experience, and I think that's how he testified in his deposition. Well, I assume if there's still, as it were, grief once the thing is finished, you're going to have an unhappy customer. That's correct, Your Honor, and obviously there's reference to that in the record as well. Mr. Mintz understood that if we built the wrong tractor there were going to be significant consequences. So what about – actually, I have a bone to pick with you about the way, and it may not be your fault, but the district court handled this motion to reconsider under Rule 60B, and there was no final judgment yet in the case. The court issues its order on summary judgment March 27th of this year, and there's a very prompt motion. There's no final judgment even entered, and then the court – but there is a motion to reconsider, and the court says, well, I'm going to consider this as 60B, but if you look at 60B, 60B talks about a final judgment. There's no final judgment in this case until April 14th, which disposes of both the motion to reconsider and also enters the final judgment in Caterpillar's favor, the final judgment which, by the way, is necessary for our jurisdiction. And it's troubling to me to see courts thinking that they're invoking 60B for things that are just mid-district court proceedings because it implies the wrong standard of review. A district judge is entirely free if he wants to – he, in this case, if he wants to – to reconsider a summary judgment decision. Sometimes people point out that there are disputed issues of fact, and it's not a 60B standard. Judge, I have no explanation as to why the district court entered – waited to enter judgment until some point after and then viewed the – Mr. Mintz's motion to reconsider, to vacate, and to extend the deadline to file a motion to respond to Caterpillar's post for summary judgment as a rule 60B motion. The timing completely doesn't work because there's a March 27th summary judgment and then a prompt motion to reconsider, and then on April 14, two things happen. One, the motion to reconsider is denied and final judgment is entered, what I would call the Rule 58 final judgment, and then very promptly thereafter, seven days later, Mr. Mintz files his notice of appeal. So everything comes up on appeal from that order. There's nothing wrong with this procedure other than some procedural mislabeling going on. Well, I mean, I understand the court's position on that. We took the position in the brief that Mr. Mintz's notice of appeal did not describe what he was appealing beyond the judgment entered on April 14th. And I'm just saying the judgment – so by appealing the judgment on April 14th, everything prior to that judgment comes up, whether it's evidentiary decisions or expert decisions or a decision that a fact is immaterial or not or a decision not to reconsider the summary judgment. It all comes up. It's not like – 60B happens when you're more than 28 days out after the final judgment has been entered and somebody suddenly realizes that maybe there's something wrong. So they file the 60B and see if they can persuade the district court. And that kind of an order doesn't toll the time for taking appeal. It's just a completely different thing. Yeah, I understand your position, Judge. Obviously, we took a somewhat different position in the briefs. I think it was a result of some of the timing of the district court and when they entered judgment. And I'm telling you, there's nothing wrong with the timing. I mean, the district judge is the one, too, who suddenly starts talking about 60B, and I just would like to get it clarified that that's not the right rubric in this circumstance. Setting that issue aside, Judge, I think that we hit on the highlights of Caterpillar's position that if the case is reviewed de novo and the entire case is reviewed de novo, the district court's order should still be affirmed because there are – he was not meeting – Mr. Mintz was not meeting Caterpillar's legitimate performance expectations. He hasn't identified any similar situated employees who are treated better and the record's devoid of any evidence of pretext on behalf of the Caterpillar decision makers. And have you mentioned anything about the retaliation claim? Well, under the indirect method of proof, Judge, I think some of the same reasons would apply in that he's still not meeting Caterpillar's legitimate performance expectations. He still hasn't identified other employees who either have or have not complained and have been treated better. Also, I believe Judge Williams pointed out that Mr. Mintz's performance problems started long before he ever engaged in protected activity. They continued afterwards. But they got – his rating got worse after the complaint, didn't it? It did, Your Honor. So it got progressively worse. So in 2010 – So doesn't that make out his retaliation claim? I'm sorry, Judge. I'd be happy to answer your question. It looks like – Please, you should always answer the judge's question. No, I do not believe that that makes out his retaliation claim, Your Honor, because he had been – it was a series of poor performance that by that point had been going on for a year, and it was getting progressively worse, which is reflected in his number. So the idea would not be to continue to give him the same performance evaluation or worse performance evaluation. It would be to continue to manage his performance. So I do not think that that sets up his retaliation claim. All right. Thank you very much, Mr. Torres. Thank you. Anything further, Mr. – I think he had about a minute. Apparently not. Thank you very much to both counsel. We'll take the case under advisement.